UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| KEITH COWENS, | : | Case No. 3:16-cv-227 |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | District Judge Walter H. Rice |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.   Introduction

Plaintiff Keith Cowens brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. He applied for benefits on October 2, 2012, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #9), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since March 1, 2012. He was forty-nine years old at that time and was therefore considered a "younger person" under Social Security Regulations. Plaintiff turned fifty years old on February 28, 2013 and was thus considered a person "closely approaching advanced age." *See* 20 C.F.R. §§ 404.1563(c)-(d), 416.963(c)-(d). He has a high school education. *See* 20 C.F.R. §§ 404.1564(b)(2), 416.964(b)(2).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Kenyon that despite having surgery on his neck in 2006, he still has pain. (Doc. #6, *PageID* #s 69-70). On a scale from one to ten, he rated his pain at six. *Id.* at 70. He also "lost a little bit of mobility" in his neck. *Id.* If he lifts a lot, his pain increases and he cannot move his neck. *Id.* He has not had any treatment since his surgery other than an ultrasound and MRI. *Id.* at 71. Plaintiff also has "real sharp pains, [] like a burning sensation or a stinging sensation" in his lower back. *Id.* He takes medication and puts ice on it every other day for an hour. *Id.* at 72.

Plaintiff also struggles with anxiety, depression, and panic attacks. *Id.* at 73. He has panic attacks every other day and described them as "just a depressed feeling where I don't want to be around nobody …." *Id.* at 74. He sees Dr. Rahman once per month and has for the past ten years. *Id.* at 76. Dr. Rahman prescribes medication, and when asked

2

if it has been helpful, Plaintiff responded, "Not really, the only thing that's kind of helping me right now is the Adderall. It helps me just get up and get motivated, you know, and do some things around the house." *Id*.

Plaintiff also has bipolar disorder. *Id.* at 78. He explained, "I get depressed for a week at a time and then, out-of-the-ordinary, I do some crazy things on the other hand." *Id*. For example, at his last job, "I'd just walk around and just pull down my pants and moon people …." *Id*. He is also irritable. *Id.* at 75. Plaintiff testified that at prior jobs, if someone told him to do something or told him he was not doing something correctly, he would get mad and walk out. *Id.* at 74. He and his girlfriend also have problems getting along and have broken up eight times in ten months. *Id.* at 81.

Plaintiff lives in an apartment with his girlfriend. *Id.* at 68. He has a driver's license but does not drive because he gets nervous when he is around a lot of people and has panic attacks. *Id.* at 68-69. He only leaves his apartment once every couple of weeks to go to the grocery with his girlfriend or visit his parents. *Id.* at 75, 80. They typically go to the grocery late at night and he does not talk or interact with anyone. *Id*.

He is able to shower and dress himself, but he only showers once every three to four weeks. *Id.* at 79. He does not do any chores and does not have any hobbies. *Id.* at 80. Plaintiff estimated he could lift no more than five pounds, stand for no more than twenty to thirty minutes, and walk for a quarter mile. *Id.* at 77-78. He can sit all day when he is depressed. *Id.* at 78. He spends his days watching television and sleeping. *Id.* at 80. He watches reality shows but has to skip through channels because he gets bored watching the same thing. *Id.* at 83. He estimated that he sleeps seventeen hours in

a twenty-four-hour period. *Id.* at 82-83. He takes three to four hour naps throughout the day and sleeps eight hours per night. *Id.* at 77, 83.

> B. **Medical Opinions**
>
> > i. **Mahmood Rahman, M.D.**

Dr. Rahman, Plaintiff's treating psychiatrist, completed a medical functional capacity assessment on July 1, 2013. *Id.* at 610. He opined Plaintiff was markedly limited in his ability to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; and interact appropriately with the general public. *Id.*

On September 3, 2013, Dr. Rahman completed a second mental impairment questionnaire. *Id.* at 606-08. He diagnosed bipolar disorder, panic disorder, and attention deficit disorder (ADD). *Id.* at 606. Plaintiff's signs and symptoms include sleep disturbances, emotional lability, recurrent panic attacks, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, manic syndrome, and hostility/irritability. *Id.* at 606-07. Dr. Rahman opined that Plaintiff's prognosis is guarded and he cannot be gainfully employed. *Id.* at 607. Further, his impairments and treatment would cause him to be absent three or more times per month. *Id.* at 608. He has marked restrictions of activities of daily living; marked deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner; and

marked episodes of deterioration or decompensation in work.  *Id*.  He has moderate difficulties in maintaining social functioning.  *Id*.

### ii.  Stephen W. Halmi, Psy.D.

Dr. Halmi evaluated Plaintiff on September 30, 2012.[2]  *Id.* at 426, 444.  He diagnosed a mood disorder not otherwise specified (NOS), an anxiety disorder NOS, and a personality disorder NOS.  *Id.* at 432.  He assigned an overall Global Assessment of Functioning (GAF) score of 50 and opined Plaintiff's prognosis is guarded.  *Id.* at 432-33.  Dr. Halmi indicated he is capable of understanding, remembering, and carrying out multi-step instructions.  *Id.* at 434.  Additionally, he found no evidence of problems with perseverance, pace, or concentration but noted that "he may have some difficulty with a lack of initiative and motivation because of his mood disorder."  *Id*.  Further, he has the ability to meet deadlines and solve unforeseen, novel problems but would likely give up if a task was too difficult.  *Id.* at 435.

Dr. Halmi opined Plaintiff "would likely have problems getting along with coworkers and supervisors based on his history.  This appears to be a long term problem that has been exacerbated by his irritability due to depression.  It is noteworthy that he was cordial and cooperative during [the] evaluation, which suggests that he has the ability to get along with others if motivated."  *Id.* at 434.  However, Plaintiff lacks the social skills or patience to deal effectively with difficult people.  *Id.* at 435.  Moreover, "he

---

[2] The record includes two reports from Dr. Halmi that are identical except that one indicates the evaluation occurred on September 30, 2012 and the other indicates November 30, 2012.  (Doc. #6, *PageID* #s 426-35, 444-53).

5

would likely respond to constructive criticism with hypersensitivity and possibly hostility." *Id*.

### iii. Maria Congbalay, M.D., & Diane Manos, M.D.

On November 12, 2012, Dr. Congbalay reviewed Plaintiff's records. *Id.* at 95-110. She opined that Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently. *Id.* at 104. He can stand and/or walk for a total of six hours in an eight-hour day and sit for six hours. *Id*. He can frequently crawl and climb ladders, ropes, and scaffolds. *Id.* at 105. Dr. Congbalay concluded that Plaintiff is not under a disability. *Id.* at 109.

Dr. Manos reviewed Plaintiff's records on March 5, 2013 and agreed with Dr. Congbalay's conclusions. *Id.* at 129-43.

### iv. Deryck Richardson, Ph.D., & Cynthia Waggoner, Psy.D.

Dr. Richardson reviewed Plaintiff's records on December 7, 2012. *Id.* at 95-110. He found that Plaintiff has five severe impairments: a spine disorder, diabetes mellitus, an affective disorder, a somatoform disorder, and a personality disorder. *Id.* at 102. Additionally, Plaintiff has mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. *Id*. Dr. Richardson opined, he "can understand and remember complex tasks but can only carry out 3-4 step tasks that do not require a rapid pace. Therefore, he should be limited to this span." *Id.* at 106. He is able to "carry out tasks in settings where duties are relatively static and changes can be explained." *Id.* at 107. Further, Plaintiff "[c]an interact

6

appropriately with 3-4 person groups of familiar people but not in settings where contact with unfamiliar people or more than superficial contacts are required." *Id.* at 106.

On March 2, 2013, Dr. Waggoner reviewed Plaintiff's records and affirmed Dr. Richardson's assessment. *Id.* at 129-43

### III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard

7

is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] He reached the following main conclusions:

---

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

8

Step 1: Plaintiff has not engaged in substantial gainful employment since March 1, 2012.

Step 2: He has the severe impairments of cervical degenerative disc disease with residuals of a remote prior 2006 cervical fusion, mild lumbosacral degenerative disc disease, diabetes mellitus, depression, an anxiety disorder, a personality disorder, and a somatoform disorder.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards, such as unprotected heights or dangerous machinery; (4) limited to performing unskilled, simple, repetitive tasks; (5) occasional, superficial contact with coworkers and supervisors; (6) no public contact; (7) no jobs involving teamwork or tandem tasks; (8) limited to working in groups of three to four people; (9) no jobs involving sales, transactions or negotiations; (10) no fast paced production work or jobs involving strict production quotas; and (11) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work from one day to the next."

Step 4: He is unable to perform any of his past relevant work.

Step 5: He could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 41-55). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 54.

9

## V. Discussion

Plaintiff contends that the ALJ erred in analyzing the opinion evidence, finding that Plaintiff was not credible, and relying on the vocational expert's testimony. The Commissioner maintains that substantial evidence supports the ALJ's evaluation of the opinions and his finding that Plaintiff was not fully credible. Additionally, the Commissioner asserts that the ALJ reasonably relied on the vocational expert's testimony.

### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and

consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

ALJ Kenyon found that the opinion of Plaintiff's treating psychiatrist, Dr. Rahman, was not entitled to controlling or deferential weight under the Regulations and assigned it "little weight." (Doc. #6, *PageID* #52). He provides a few reasons beginning with part of the treating physician rule.

Under the first condition of the treating physician rule—whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques— the ALJ found that Dr. Rahman's opinion is "not fully supported by the record." (Doc. #6, *PageID* #52). The ALJ provides no further explanation or clarification. Without more, the Court cannot engage in a meaningful review of the ALJ's decision because his reasoning is not "sufficiently specific to make clear … the weight [he] gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5.

Additionally, without more information, the Court cannot determine "whether the ALJ applied the correct legal standards …." *Blakley*, 581 F.3d at 406. Based on the limited information available, it appears that the ALJ required more of Dr. Rahman than the Regulations require: "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is *not necessary* that the opinion be *fully supported* by such evidence." Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (emphasis added). Thus, finding that Dr. Rahman's opinion is not fully supported does not necessarily determine that it is not entitled to controlling weight.

The ALJ then found that Dr. Rahman's "assessments are inconsistent with [Plaintiff's] progress notes since the alleged disability onset date, which show that [Plaintiff] has mild to moderate level symptoms with GAF scores as high as 65."[4] (Doc. #6, *PageID* #52). It is not clear if the ALJ is addressing the second condition under the treating physician rule—whether Dr. Rahman's opinion is "not inconsistent" with other substantial evidence in the case record—or if he is addressing the consistency factor used when the treating physician rule does not apply. There is a substantial difference. The Social Security Administration defines "not inconsistent:" "This is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that

---

[4] The ALJ accurately observed that Dr. Rahman's notes are difficult to read. However, Plaintiff is also correct that in light of that issue, it is perhaps even more important for the ALJ to specifically explain what parts of Dr. Rahman's notes he is referring to.

contradicts or conflicts with the opinion." Soc. Sec. R. 96-2p, 1996 WL 374188, at *3. In comparison, the Social Security Regulations explain that under the factors, "[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(c)(4). This distinction helps differentiate between the ALJ's first task—deciding whether the treating physician rule applies—and the ALJ's second task—continuing to weigh the treating physician's opinion under the additional factors of treatment relationship, supportability, consistency, and specialization. The ALJ here blended inconsistency with consistency rather than considering their distinct uses as the Regulations require. *Compare* 20 C.F.R. § 404.1527(c)(2), *with* 20 C.F.R. § 404.1527(c)(4).

Further, the ALJ's finding is not supported by substantial evidence. Dr. Rahman's notes are generally consistent with his opinions. For example, in September 2012, when Plaintiff returned to treatment after a five-year hiatus, Dr. Rahman noted his appearance was distractible; his sleep had decreased; his mood was irritable, anxious, guarded, and labile; and his speech was pressured, circumstantial, and tangential. (Doc. #6, *PageID* #469). He diagnosed bipolar disorder, most recent episode mixed, severe with psychotic features and assigned a GAF score of 50. *Id.*

ALJ Kenyon is correct that in November 2012, Dr. Rahman adjusted Plaintiff's GAF score to 65, where it stayed for the remainder of the treatment notes. *Id.* at 464-67, 603-05, 618-30. Yet, it is puzzling that ALJ Kenyon would rely on GAF scores to find inconsistency between Dr. Rahman's treatment notes and opinion because, as the ALJ

later points out, "Global Assessment of Functioning is only a subjective estimate by a clinician of the claimant's status in the preceding two weeks." *Id.* at 52.

Additionally, "the Commissioner 'has declined to endorse the [Global Assessment Functioning] score for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that [Global Assessment Functioning] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"" *DeBoard v. Comm'r of Soc. Sec.,* 211 F. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart,* No. 04–16371, 2005 WL 1317040, at *6 n. 5, 133 F. App'x 684 (11th Cir. June 2, 2005); and 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). Further, the fifth and most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) no longer uses the GAF score, in part due to "its lack of conceptual clarity (*i.e.,* including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Liza H. Gold, *DSM-5 and the Assessment of Functioning: The World Health Organization Disability Assessment Schedule 2.0,* 42 J. Am. Acad. Psychiatry & Law 173, 174 (2014) (footnote omitted) (*available at* http://www.jaapl.org. Search by article title). The recent rejection of GAF scores by the psychiatric professionals who created it and its lack of direct correlation with the requirements of the Commissioner's mental disorders listings cast too dark a shadow over its reliability for it to serve as a reasonable basis for rejecting a treating psychiatrist's opinion.

However, even if Dr. Rahman's opinion was not entitled to controlling weight under the treating physician rule, "Treating source medical opinions are still entitled to

deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." Soc. Sec. R. 96-2P, 1996 WL 374188, at *4. ALJ Kenyon only provided one other reason for discounting Dr. Rahman's opinions. He found that there is no basis for Dr. Rahman's opinion that Plaintiff would be absent more than three times a month. (Doc. #6, *PageID* #52).

The questionnaire asks, "On average, how often do you anticipate that your patient's impairments or treatment would cause your patient to be absent from work?" *Id.* at 608. It then provides six choices, one of which is "more than three times a month." *Id.* It does not ask the doctor to provide a basis or for any further explanation. Because the form does not ask for an explanation, Dr. Rahman's answer must be read in the context of all the information included in the assessment. Dr. Rahman identified several psychological signs and symptoms that would reasonably cause Plaintiff to miss work. Specifically, he indicated Plaintiff has social withdrawal/isolation, recurrent panic attacks, and difficulty thinking and concentrating. Dr. Rahman's treatment notes also support his opinion that Plaintiff would be absent more than three times per month. For example, he indicated in each treatment note between January 2013 and December 2013 that Plaintiff was anxious, guarded, and labile. *Id.* at 464-65, 603-05, 625-26. He also regularly noted Plaintiff was unable to work. *Id.* at 464-68, 603-05, 618-19, 623-30.

The one reason provided by the ALJ does not amount to "good reasons" for rejecting Dr. Rahman's opinion. "The failure to provide 'good reasons' for not giving [the treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule…." *Gayheart,* 710 F.3d at

15

377. Therefore, the ALJ's finding that Dr. Rahman's opinion is entitled to "little weight" is not supported by substantial evidence.

In contrast to the "little weight" the ALJ assigned to Plaintiff's treating psychiatrist, he gave "great weight" to the opinions of Drs. Halmi, Congbalay, Manos, Richardson, and Waggoner. (Doc. #6, *PageID* #s 50-53). The ALJ only provides one reason for giving great weight to the opinions of Dr. Congbalay and Dr. Manos: "Their conclusions that [Plaintiff] could perform light level work are well supported by the record." *Id.* at 51. He similarly only provides one reason for giving great weight to the opinions of Dr. Richardson and Dr. Waggoner: "[T]heir opinions are well supported by objective, clinical findings." *Id.* at 52. The ALJ provides no further detail and does not address any other factor. This constitutes error because "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant…." 20 C.F.R. § 404.1527(e)(2)(ii).

In addition, the ALJ erred by applying much greater scrutiny Dr. Rahman's opinion than he did to the State agency consulting and record-reviewing physicians. *See Gayheart,* 710 F.3d at 379 (citing 20 C.F.R. § 404.1527(c); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996)) ("A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires."). For example, the ALJ found that Dr. Rahman's opinion was entitled to "little weight," in part, because he found it was inconsistent with the GAF scores assigned. But, Dr. Halmi assigned Plaintiff a GAF

16

score of 50—a score the ALJ gave less weight to because he found it to be "unreasonably low"—but still gave Dr. Halmi's opinion "great weight." (Doc. #6, *PageID* #52).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[5]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or

---

[5] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Keith Cowens was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

Date:  July 17, 2017                                    *s/Sharon L. Ovington*
                                                        Sharon L. Ovington
                                                        United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).